# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ELISHA SMITH : <br> : <br> Plaintiff, : <br> : <br> v. : <br> : <br> SHAUN DONOVAN, *SECRETARY,* : <br> *DEPARTMENT OF HOUSING AND* : <br> *URBAN DEVELOPMENT*, : <br> : <br> Defendant. : <br> : | CIVIL ACTION NO. 10-1160 |

## MEMORANDUM OPINION

**Rufe, J.**                                                                                                                                                                   **January 17, 2013**

      Plaintiff Elisha Smith, an employee of the United States Department of Housing and Urban Development ("HUD"), filed suit alleging that she was denied a promotion to the position of Senior Single Family Housing Specialist because of her race and political affiliation. Defendant has filed a motion for summary judgment, which Plaintiff opposes. For the following reasons, the motion will be granted in part and denied in part.

## I.    FACTS

      The following facts are either undisputed or viewed in the light most favorable to Plaintiff, the non-moving party. Plaintiff, an African-American woman, has been employed by HUD as a Single-Family Housing Specialist in the Real Estate Owned ("REO") division of the Philadelphia Home Ownership Center ("HOC") since 1998.[1] Her employment level is GS-12.[2] In 2004, three vacancies were announced for the position of GS-13 Senior Family Housing

---

[1] Statement of Undisputed Material Facts ("SUMF") ¶¶ 1-2.

[2] SUMF ¶ 2.

Specialist in the REO division.[3] Plaintiff was qualified for the positions, and applied.[4] After the initial ranking of the applicants for the positions by Paula Lopez, the Human Resources Specialist charged with processing the applications, Plaintiff had the second-highest ranking on the Best Qualified List.[5] After further review and interviews of those on the Best Qualified List, Cheryl Walker, the Director of the REO division, recommended Robert Contois (a White man who obtained the highest ranking on the Best Qualified List), Patricia Lawlor (a White woman), and Deborah Peacock (a White woman) for the three positions, and they were selected.[6] The parties dispute whether Ms. Walker was aware of the rankings of the candidates on the Best Qualified List.[7] Plaintiff does not challenge Mr. Contois's selection, based upon his level of experience in the division and his ranking on the Best Qualified List.[8] Plaintiff contends, however, that the other two individuals were less qualified and had little or no prior experience working in the division.[9]

---

[3] SUMF ¶ 4.

[4] SUMF ¶ 14.

[5] SUMF ¶¶ 5, 11. Ms. Lopez apparently is based in Denver. Rogers Dep. Ex. 6.

[6] SUMF ¶¶ 11, 15. Ms. Lawlor and Ms. Peacock had the same ranking on the Best Qualified List, which was several points lower than the rankings of Plaintiff and three other individuals. SUMF ¶ 12.

[7] Pl.'s Disputed Facts ¶¶ 16-19.

[8] Smith Dep. at 64.

[9] Pl.'s Disputed Facts ¶¶ 13-14.

## II. STANDARD OF REVIEW

Upon motion of a party, summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[10] A party moving for summary judgment has the initial burden of supporting its motion by reference to admissible evidence showing the absence of a genuine dispute of a material fact or showing that there is insufficient admissible evidence to support the fact.[11] Once this burden has been met, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument."[12]

Summary judgment should be granted only if the moving party persuades the district court that "there exists no genuine issue of material fact that would permit a reasonable jury to find for the nonmoving party."[13] A fact is "material" if it could affect the outcome of the suit, given the applicable substantive law.[14] A dispute about a material fact is "genuine" if the evidence presented "is such that a reasonable jury could return a verdict for the nonmoving party."[15]

---

[10] Fed. R. Civ. P. 56(a).

[11] Fed. R. Civ. P. 56(c).

[12] Berckeley Inv. Grp., Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006).

[13] Miller v. Ind. Hosp., 843 F.2d 139, 143 (3d Cir. 1988).

[14] See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

[15] Id.

In evaluating a summary judgment motion, a court "must view the facts in the light most favorable to the non-moving party," and make every reasonable inference in that party's favor.[16] Further, a court may not weigh the evidence or make credibility determinations.[17] Nevertheless, the party opposing summary judgment must support each essential element of his or her opposition with concrete evidence in the record.[18] "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[19]

## III. DISCUSSION

*A. Claim of Racial Discrimination*

Under Title VII of the Civil Rights Act of 1964, it is "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."[20]

In determining whether there has been an unlawful employment practice, the Court follows the familiar McDonnell Douglas Corp. v. Green[21] burden-shifting framework, where a plaintiff bears the initial burden of establishing a *prima facie* case of discrimination by a preponderance of the evidence. "The existence of a *prima facie* case of employment

---

[16] Hugh v. Butler Cnty. Family YMCA, 418 F.3d 265, 267 (3d Cir. 2005).

[17] Boyle v. Cnty. of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998).

[18] Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

[19] Anderson, 477 U.S. at 249-50 (citations omitted).

[20] 42 U.S.C. § 2000e-2(a)(1).

[21] 411 U.S. 792 (1973).

discrimination is a question of law that must be decided by the court but the *prima facie* test remains flexible and must be tailored to fit the specific context in which it is applied."[22] If a plaintiff establishes her *prima facie* case, the burden shifts to the employer to "articulate some legitimate, nondiscriminatory reason for the employee's rejection. . . . The plaintiff then must establish by a preponderance of the evidence that the employer's proffered reasons were merely a pretext for discrimination, and not the real motivation for the unfavorable job action."[23]

A plaintiff may demonstrate pretext, and so defeat a motion for summary judgment, by either "(i) discrediting the proffered reasons, either circumstantially or directly, or (ii) adducing evidence, whether circumstantial or direct, that discrimination was more likely than not a motivating or determinative cause of the adverse employment action."[24] The Third Circuit has cautioned that "[i]ssues such as intent and credibility are rarely suitable for summary judgment. . . . [because] discriminatory intent means actual motive, and is a finding of fact to be determined by the factfinder."[25] "To discredit the employer's proffered reason, however, the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent."[26] "Rather, the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the

---

[22] Wishkin v. Potter, 476 F.3d 180, 185 (3d Cir. 2007) (citing Sarullo v. U.S. Postal Serv., 352 F.3d 789, 797-98 (3d Cir. 2003) (*per curiam*)).

[23] Sarullo, 352 F.3d at 797.

[24] Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994).

[25] Wishkin, 476 F.3d at 184 (internal citations omitted).

[26] Fuentes, 32 F.3d at 765 (citing Ezold v. Wolf, Block, Schorr & Solis-Cohen, 983 F.2d 509, 531, 533 (3d Cir.1992)).

employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them unworthy of credence, . . . and hence infer that the employer did not act for the asserted non-discriminatory reasons."[27]

Here, Defendant concedes that Plaintiff can establish a *prima facie* case.[28] Defendant has proffered race-neutral reasons for the selection of Ms. Peacock and Ms. Lawlor instead of Plaintiff: Ms. Peacock is fluent in Spanish and has a law degree, and Ms. Lawlor is a licensed real estate appraiser, and Ms. Walker was impressed with their abilities as revealed through interviews and writing assignments.[29] Defendant argues that summary judgment must be granted because Plaintiff cannot prove that these reasons were a pretext for discrimination. The Court disagrees.

Neither a law degree nor licensure as an appraiser was a stated qualification for the position, and in the initial ranking of candidates, both Ms. Peacock and Ms. Lawlor received rankings much lower than Plaintiff's ranking. In an affidavit submitted by Defendant, Ms. Walker has explained why other candidates impressed her more favorably than Plaintiff, both in the interviews and the writing assignment.[30] A jury would be entitled to credit this testimony, and conclude that there was no discrimination. However, Plaintiff has produced evidence that Ms. Walker's notes from the interviews contradict these explanations and that the writing assignment Ms. Walker devised was based upon a specific situation in Dearborn, Michigan

---

[27] Id. (internal quotations and punctuation omitted).

[28] Def.'s Mem. Supp. Summ. J. at 3.

[29] Def.'s Mem. Supp. Summ. J. at 3; Walker Aff. ¶¶6-10.

[30] Walker Aff. ¶¶ 6-14.

familiar to both Mr. Contois and Ms. Lawlor but not to other applicants, including Plaintiff.[31] The evidence also shows that six candidates, including Ms. Lawlor and Ms. Peacock, returned their writing assignments after the deadline, and Ms. Walker acknowledges that she did not penalize "minor lateness" but does not state whether she considered that those with more time might produce a more polished product.[32] In addition, although Ms. Walker's affidavit stated that Ms. Lawlor's writing sample was better than Plaintiff's, in her deposition Ms. Walker testified that the two candidates' written assignments received "equal weight" in the promotion decision.[33] All of these issues constitute factual disputes ill-suited to summary resolution.

Defendant next goes beyond its argument that Ms. Peacock and Ms. Lawlor were well-qualified for the positions to contend that Plaintiff herself was barely qualified. But the record contains conflicting evidence as to Plaintiff's qualifications. As noted above, Ms. Lopez ranked Plaintiff highly in comparing the candidates' records to the stated qualifications for the positions. In addition, Plaintiff's evaluations during her employment consistently rated her performance as "Outstanding" and "Highly Successful," and these evaluations were approved by Ms. Walker.[34] Ms. Walker testified at her deposition, however, that Plaintiff's positive performance evaluations did not accurately reflect Plaintiff's performance deficiencies.[35] Defendant therefore has placed Ms. Walker's credibility squarely at issue in determining whether or not discrimination played a role in the selection process. As the Supreme Court has explained, "[t]he factfinder's disbelief of

---

[31] Pl.'s Disputed Facts ¶¶ 54-55; Walker Aff. ¶ 10.

[32] Pl.'s Disputed Facts ¶ 56; Ex. S.

[33] 1/20/11 Walker Dep. 97.

[34] Pl.'s Disputed Facts ¶¶ 70-74

[35] Walker Dep. 1/20/11 at 150.

the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the *prima facie* case, suffice to show intentional discrimination. Thus, rejection of the defendant's proffered reasons will permit the trier of fact to infer the ultimate fact of intentional discrimination."[36] Resolution of these issues requires a trial, and summary judgment will be denied on this claim.[37]

### B. Constitutional Claim of Discrimination Based on Party Affiliation

Plaintiff's claim that she was discriminated against because she is a Democrat implicates her First Amendment rights of freedom of speech and association.[38] In order to establish a *prima facie* case of political discrimination, Plaintiff must show "(1) she was employed at a public agency in a position that does not require political affiliation; (2) she was engaged in constitutionally protected conduct, and (3) this conduct was a substantial or motivating factor in the government's employment decision. . . . If a plaintiff makes out a *prima facie* case, the defendant may avoid a finding of liability by proving by a preponderance of the evidence that the same employment action would have been taken in the absence of the protected activity."[39] It is undisputed that the position for which Plaintiff applied does not require political affiliation, but

---

[36] St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 511 (1993).

[37] Although there is additional evidence produced by both sides, the above discussion suffices to demonstrate why summary judgment is inappropriate on this claim. In addition, because summary judgment has been denied on this claim, the Court does not reach Plaintiff's argument that a critical document created at the time of the selection process, the Crediting Plan, was lost by Defendant during this litigation. If there is to be any issue with regard to this document at trial, appropriate motions in limine should be filed.

[38] Galli v. N.J. Meadowlands Comm'n, 490 F.3d 265, 268 (3d Cir. 2007).

[39] Erb v. Borough of Catawissa, 749 F. Supp. 2d 244, 253 (M.D. Pa. 2010) (internal citations and quotations omitted).

Defendant argues that Plaintiff cannot establish the second and third elements of her *prima facie* case. The Court agrees.

There is no evidence that any of the candidates were asked to disclose their political affiliation, that they were interviewed about political issues, or that political affiliation played a role in the hiring process; in fact, like Plaintiff, both Ms. Peacock and Ms. Lawlor are registered Democrats.[40] Plaintiff cites two facts that she claims demonstrate that politics motivated Defendant's action: first, that Ms. Peacock had worked on the staff of a Republican United States Senator, and second, that during the hiring process, Gary Rogers, a HUD official, sent an email to Ms. Walker regarding whether Ms. Walker wanted to interview more or fewer candidates. The email stated that "politically and Union wise, I think we have to show some consideration" to interviewing additional candidates, including Ms. Peacock and Ms. Lawlor.[41] Neither fact supports the elements of a First Amendment claim in this case.

As to the first issue, Plaintiff cites no case law for the proposition that HUD should not have considered a candidate's work experience if that experience were on the staff of a United States Senator, in the absence of evidence that the party affiliation of the Senator was the relevant factor. With regard to the second issue, Mr. Rogers testified without contradiction that he "was talking strictly and only about the internal politics of the office."[42] In addition, Ms. Peacock was not a union member at the time of selection, while Ms. Lawlor later resigned her

---

[40] Peacock Aff. ¶¶ 9-12; Lawlor Aff. ¶¶ 10-11.

[41] Pl.'s Disputed Facts ¶ 21; Rogers Dep. Ex. 1.

[42] 2/16/12 Rogers Dep. at 146. It should be noted that in connection with the claim of racial discrimination, Plaintiff cited this email in arguing that "there is evidence that Ms. Walker was advised to consider less qualified Caucasian candidates to advance her position within HUD both politically and with the union." Pl.'s Mem. Opp. Summ. J. at 17.

union membership.[43] This evidence is insufficient to allow a factfinder to consider this issue, especially as Plaintiff has produced no evidence that Republicans were favored over Democrats or union members were favored over non-union members. The motion will be granted as to this claim.[44]

## IV. CONCLUSION

The evidence of record is sufficient to permit Plaintiff's claim of racial discrimination to proceed to trial, but Plaintiff has failed to marshal evidence to support her First Amendment Claim, and summary judgment will be granted on that claim in favor of Defendant. An order will be entered.

---

[43] Peacock Aff. ¶ 12; Lawlor Aff. ¶ 11.

[44] Because the Court grants summary judgment on the merits of this claim, it does not reach Defendant's argument that the claim was asserted too late.